**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SAMANTHA W.,[1] | : | Case No. 2:25-cv-00496 |
| | : | |
| Plaintiff, | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | (by full consent of the parties) |
| vs. | : | |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

## DECISION AND ENTRY

Plaintiff Samantha W. brings this case challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits (DIB)[2]. The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), Plaintiff's Reply (Doc. #12), and the administrative record (Doc. #7).

## I. Background

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

[2] While Court documents and medical evidence in the record reflect that the proper spelling of Plaintiff's first name is "Samantha," most of the documents from the Social Security Administration, including the ALJ's decision (Doc. #7-2) refer to Plaintiff as "Samatha." To the best of its ability, the Court believes the spelling used in the instant decision is correct.

(1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing "substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits in December 2022, alleging disability due to several impairments, including major depression, borderline personality disorder, anxiety, and attention deficit disorder (ADD).[3] (Doc. #7-6, *PageID* #254). After Plaintiff's application was denied initially and upon reconsideration, she requested and received a hearing before Administrative Law Judge (ALJ) Jeffrey Hartranft on March 13, 2024. (Doc. #7-2, *PageID* #s 53-81). Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful activity since June 21, 2021, the alleged onset date.

Step 2: She has the severe impairments of ADHD, borderline personality disorder, and affective and anxiety-related disorders, including panic disorder.

Step 3: She does not have an impairment or combination of impairments that meets or medically equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity (RFC), or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "a full range of work at all

[3] While one of Plaintiff's medical conditions is listed as ADD, the same document indicates that Plaintiff is taking medication for attention deficit hyperactivity disorder (ADHD). (Doc. #7-6, *PageID* #254, 256). This same medication is later listed as treating ADD. *Id.* at 272. Outside of this document, most of the evidence in the record discusses Plaintiff's ADHD. (*See e.g.*, Doc. #s 7-3, 7-7).

> exertional levels, but with the following non-exertional limitations: She can perform simple routine and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes. She can work in settings with no strict production quotas or fast-paced work such as on an assembly line. She can occasionally interact with the general public, coworkers, and supervisors."
>
> Plaintiff is unable to perform her past relevant work as composite job of front desk clerk and cleaner/janitor; cook; waitress; and quality control technician.

Step 5: Considering her age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

(Doc. #7-2, *PageID* #s 33-42). Based on these findings, the ALJ concluded that Plaintiff has not been under a benefits-qualifying disability from June 21, 2021, through the date of his decision of April 29, 2024. *Id.* at 42.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #7-2, *PageID* #s 31-42), Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #11), and Plaintiff's Reply (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v.*

*Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir.2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. **Discussion**

Plaintiff asserts that the ALJ failed to properly evaluate the opinion evidence from state agency psychologists Deryck Richardson, Ph.D., and Nicole Sampson, Ph.D., and from certified nurse practitioner Cari Calloway. (Doc. #8, *PageID* #s 562–68). The Commissioner contends that the ALJ properly considered the record as a whole in determining the RFC and properly evaluated the opinion evidence in accordance with the appropriate regulations. (Doc. #13, *PageID* #s 578–84).

A plaintiff's RFC is an assessment of "the most [a plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1) (2012). A plaintiff's RFC assessment must be based on all the relevant evidence in her case file. *Id.* The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20

C.F.R. § 404.1513(a)(1)–(5). Regarding two of these categories—medical opinions and prior administrative findings—an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with [Plaintiff]"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2). When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). An ALJ may discuss how he or she evaluated the other factors but is generally not required to do so. 20 C.F.R. § 404.1520c(b)(2).

While these new regulations are more relaxed than the former rules governing the evaluation of medical opinions, "they still require that the ALJ provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec.

11, 2020), *report and recommendation adopted sub nom. Lester v. Comm'r of Soc. Sec.*, No. 5:20CV1364, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). At bottom, the new regulations "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495 (ATB), 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

***State agency psychological consultants Dr. Richardson and Dr. Sampson***

Dr. Richardson reviewed Plaintiff's medical evidence at the initial level on May 5, 2023. (Doc. #7-3, *PageID* #s 83–89). Dr. Richardson found moderate limitations in all the "B Criteria" areas of functioning. *Id.* at 85. He opined that that Plaintiff could understand, remember, and carry out 1 to 3 step simple, repetitive tasks in an unskilled work environment with low production quotas and flexible time constraints; relate adequately on a superficial basis in an environment that entailed occasional interactions with supervisors, coworkers, and the public; and adapt to a routine, predictable work setting with occasional changes in responsibilities and expectations. *Id.* at 87–88. At the reconsideration level, Dr. Sampson reviewed Plaintiff's updated record on September 27, 2023, and added that Plaintiff could complete short cycle work tasks that did not require adherence to strict time or production demands and adapt to infrequent changes in a relatively static work environment. *Id.* at 96–97. Dr. Sampson also clarified that Plaintiff still retained the capacity for work that was simple and routine in nature with tasks that remain reasonably static,

though changes needed to be both explained and demonstrated, and that criticism to Plaintiff should not be given in a public venue and would be better received if constructive and alternatives suggested and explained. *Id.*

First, Plaintiff alleges that the ALJ erred in his evaluation of Dr. Richardson's and Dr. Sampson's opinions. (Doc. #8, *PageID* #562). In reviewing the state agency psychological consultants' findings, the ALJ found the assessments to be "not persuasive." (Doc. #7-2, *PageID* #40). The ALJ found that, although the consultants' opinions were supported by a summary of relevant evidence as well as the nature of Plaintiff's mental impairments, they were only somewhat consistent with the evidence of record, which the ALJ found does document that "stress aggravates [Plaintiff's] position." *Id.* Additionally, the ALJ found that the consultants' opined limitations with respect to criticism were not supported by the evidence of record, which routinely documented Plaintiff was pleasant and cooperative during mental health treatment. *Id.* With regard to the opined limitation to "superficial" interactions with others, the ALJ did not find this consistent with the record, stating that "[Plaintiff's] work online interacting with others, regular trips to a gym to workout, ability to care for her disabled husband and two children, and normal mental status exam findings indicating that she has routinely been pleasant and cooperative, does not support the need for a limitation to 'superficial' interactions." *Id.*

The undersigned finds that the ALJ adequately discussed supportability and consistency in his treatment of Dr. Richardson's and Dr. Sampson's opinions, and his further engagement with their opinions in light of the evidence in the record satisfied the articulation requirements of § 404.1520c. Furthermore, substantial evidence supports the ALJ's reasons for finding their opinions

unpersuasive. While there may be evidence in the record that supports a more limited RFC, though Plaintiff does not point to any, "[a]s long as substantial evidence supports the Commissioner's decision, we must defer to it, even if there is substantial evidence in the record that would have supported an opposite conclusion." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see Jordan v. Comm'r of Soc. Sec.,* 548 F.3d 417, 422 (6th Cir. 2008) (The Court "'may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility.'") (quoting *Garner v. Heckler,* 745 F.2d 383, 387 (6th Cir. 1984)).

Next, Plaintiff argues that the ALJ erred in finding Dr. Richardson's and Dr. Sampson's opinion not persuasive because they used "non-program compliant language," which Plaintiff argues correlate to well-recognized work-related limitations. (Doc. #8, *PageID* #s 562–64). However, as discussed above, the ALJ found the consultants' opinion unpersuasive because, while supported, they were inconsistent with the record—not simply because the limitations were communicated in "non-program compliant language." (Doc. #7-2, *PageID* #40). The ALJ notes that the limitation verbiage is not program compliant language, which explains why the ALJ reworded limitations for "1-3 Step instructions" and "flexible time constraints" for "simple work-related decision with few, if any, workplace changes" and "work in setting with no strict production quotas or fast-paced work such as on an assembly line." *Id.* (citing *Id.* at 36).

To the extent that Plaintiff argues that the ALJ erred by limiting her to only "occasional[] interaction with the general public, coworkers, and supervisors" because it fails to account for Dr. Richardson's and Dr. Sampson's opined limitation of "superficial" interactions with others, Plaintiff provides no support for her assertion that the ALJ was required to adopt limitations he

did not find persuasive. (Doc. #8, *PageID* #564). ALJs are responsible for formulating a plaintiff's RFC. 20 C.F.R. § 404.1546(c). An ALJ is not required to adopt each opinion or limitation, even if he finds the medical source opinion persuasive. *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015). However, where an ALJ finds a medical opinion persuasive but declines to include a recommended limitation, he must explain why he made the decision to do so. *Hankinson v. Comm'r of Soc. Sec.*, No. 2:18-CV-58, 2020 WL 240812, at *2 (S.D. Ohio Jan. 16, 2020) (Graham, D.J.). Here, the ALJ found Dr. Richardson's and Dr. Sampson's opinions and limitations "not persuasive," which addresses the exclusion of the limitations from the RFC. *See Crawley v. Comm'r of Soc. Sec.*, No. 1:24-CV-1760, 2025 WL 1442562 (N.D. Ohio May 20, 2025). Further, the ALJ expressly explained his decision to omit the recommendation to limit Plaintiff to superficial interactions with others. (Doc. #7-2, *PageID* #40).

To the extent that Plaintiff argues the ALJ erred by omitting the consultants' limitations to "1-3 [s]tep instructions" and "flexible time constraints," while the ALJ was not required to adopt them by virtue of finding the assessments of Dr. Richardson and Dr. Sampson unpersuasive, he did account for them in Plaintiff's RFC. *Id.* at 36. Dr. Richardson and Dr. Sampon opined that Plaintiff was moderately limited in his ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to work in coordination with or in proximity to others without being distracted by them; and ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. #7-3, *PageID* #s 87, 97). In explaining these limitations, the consultants opined that Plaintiff "retains the capacity

to carry out 1-3 step simple instructions with low production quotas and flexible time constraints. [Plaintiff] can complete short cycle work tasks that do not require adherence to strict time or production demands." *Id.* at 97. In formulating Plaintiff's RFC, the ALJ noted that Dr. Richardson and Dr. Sampson used "non-program compliant language," which included limitations to "1-3 Step instructions" and "flexible time constraints." (Doc. #7-2, *PageID* #40). In some cases, such as this, it "falls to the ALJ to 'convert[ ] and incorporate[ ]' the limitations set forth in a medical opinion 'into vocationally relevant terms'…." *Stoodt v. Comm'r of Soc. Sec.*, No. 3:20-CV-2370, 2022 WL 721455, at *16 (N.D. Ohio Jan. 13, 2022) (report and recommendation), *adopted* 2022 WL 716105 (N.D. Ohio Mar. 10, 2022) (quoting *Modro v. Comm'r of Soc. Sec.*, No. 2:18-CV-900, 2019 WL 1986522, at *7 (S.D. Ohio May 6, 2019) (Vascura, M.J.) (report and recommendation), *adopted* 2019 WL 2437296 (S.D. Ohio June 11, 2019) (Smith, D.J.)). To account for the limitations that are not vocationally defined, the ALJ limited Plaintiff to "simple, routine[,] and repetitive tasks involving only simple work-related decisions with few, if any, workplace changes" and "no strict production quotas or fast-paced work[,] such as on an assembly line." (Doc. #7-2, *PageID* #36). These limitations adequately account for Dr. Richardson's and Dr. Sampson's opinions.

There is also substantial evidence in the record to support the limitations contemplated in the RFC. In April 2023, Plaintiff indicated she was living an active lifestyle with regular exercise. (Doc. #7-2, *PageID* #38). During her consultative psychological examination at this time, Plaintiff had appropriate eye contact, was cooperative, and had intact attention and concentration. *Id.* Plaintiff was able to dress, bathe, groom herself, cook and prepare food, engage in general cleaning and laundry, and use her phone; however, Plaintiff also indicated that she needed assistance with

shopping, managing money, and driving. *Id.* In May 2023, Plaintiff reported difficulty concentrating, and in August 2023, Plaintiff had normal mental status exam findings and was working out more. *Id.* at 38–39. By September 2023, mental treatment notes reflected that Plaintiff was cooperative with appropriate mood and affect. *Id.* at 39. In 2024, Plaintiff testified that she and her husband bought and sold car parts online, which required her to work three hours per day, five days per week. *Id.* at 37. To further this venture, she uploaded items onto the online store, answered questions, and priced items. *Id.* Following a house fire, Plaintiff experienced physical and emotional hardships, but ultimately helped manage her stress by "going on walks and working out at a gym in the evening around 5:30 PM." *Id.* The ALJ found Plaintiff's testimony regarding symptom severity inconsistent with the record because the record indicated "substantially normal mental status exam findings and significant activities of living," which included caring for her family, working out regularly, and engaging in online work. *Id.* In sum, the ALJ limited Plaintiff to simple routine and repetitive tasks to account for her documented concentration issues; limited her to work involving only simple work-related decisions with few, if any, workplace changes and no strict production quotes or fast-paced work such as an assembly line to account for her panic attacks and need for low stress work; and limited her to occasional interaction with the general public, coworkers, and supervisors to account for her reports of irritability and social withdrawal. *Id.* at 39.

Accordingly, the undersigned finds Plaintiff's statements of error as to the ALJ's treatment of Dr. Richardson's and Dr. Sampson's opinions unavailing.

***Certified nurse practitioner Cari Calloway***

In March 2024, NP Calloway completed a mental impairment questionnaire. (Doc. #7-7, *PageID* #s 552–56). NP Calloway reported that she had treated Plaintiff monthly since September 2021. She opined that Plaintiff would be absent from work more than 3 times a month and would be off task 20% of the time or more. *Id.* at 553–54. NP Calloway also opined that Plaintiff has marked limitations in her ability to understand, remember, or apply information; interact with others; and concentrate, persist, or maintain pace. *Id.* at 555.

The ALJ determined that NP Calloway's opinion is not supported by the treatment record—which documents substantially normal mental status exam findings, including memory and concentration—and is not consistent with the complete record—which documents that Plaintiff regularly works out at a gym and cares for her disabled husband and two children. (Doc. #7-2, *PageID* #40)The ALJ also found NP Calloway's opinion inconsistent with that of Dr. Griffith,[4] who performed a consultative psychological evaluation of Plaintiff on April 10, 2023. *Id.* (referencing Doc. #7-7, *PageID* #s 386–91). Dr. Griffith's observations and testing results do not indicate marked mental work-related limitations. *Id.* (citing Doc. #7-7, *PageID* #s 390–91).

As an initial argument, Plaintiff alleges that the ALJ did not properly evaluate NP Calloway's opinion when he evaluated the four functional domains at Step Three of the sequential evaluation process. (Doc. #8, *PageID* #s 565–68). At Step Three of the five sequential steps set forth in the Social Security Regulations, the ALJ determines whether a plaintiff has an impairment or combination of impairments that meets or medically equals the severity of one of the listed

[4] Plaintiff does not contest the ALJ's evaluation of Dr. Griffith's opinion. (*See* Doc. #s 8, 12.)

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520. As part of the analysis, the ALJ considers whether the "paragraph B" criteria are satisfied. For the criteria to be satisfied, the ALJ must find either two marked[5] limitations or one extreme[6] limitation in the four areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. If the ALJ does not find a plaintiff to be either marked in two areas of functioning or extreme in one area of functioning, the analysis proceeds to Step Four. This Court has held that "where is no requirement that the ALJ provide any specific level of articulation about the step three analysis." *McKee ex rel. McKee v. Comm'r of Soc. Sec.*, No. 2:14-CV-609, 2015 WL 1299562, at *4 (S.D. Ohio Mar. 23, 2015) (Kemp, M.J.) (citing *Bledsoe v. Barnhart,* 165 Fed.Appx. 408, 411 (6th Cir. 2006)). At step three, it is Plaintiff's burden to show that he "has an impairment of Listing severity; '[t]he burden of proof for establishing that an impairment meets or equals the requirements of a listed impairment rests with [Plaintiff].'" *McKee*, 2015 WL 1299562, at *4 (quoting *Miller v. Comm'r of Social Security,* 848 F.Supp.2d 694, 708 (E.D. Mich. 2011), *citing Foster v. Halter,* 279 F.3d 348, 354 (6th Cir. 2001)).

In this case, at Step Three of the sequential evaluation process, the ALJ determined that Plaintiff "does not have greater than moderate limitation in any of [the] four functional domains," namely (1) the ability to understand, remember, or apply information; (2) the ability to interact

---

[5] A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, on a sustained basis. (Doc. #7-2, *PageID* #s 34–35).

[6] An extreme limitation is the inability to function independently, appropriately, or effectively. (Doc. #7-2, *PageID* #s 34–35).

with others; (3) the ability to concentrate, persist, or maintain page' and (4) the ability to adapt or manage oneself. (Doc. #7-2, *PageID* #s 34–35).

For the following reasons, the undersigned finds Plaintiff's argument unpersuasive. In support of his findings, the ALJ noted that—while Plaintiff's function report indicated a fear of going into public, absence of healthy relationships, and difficulty talking, remembering, completing tasks, concentrating, understanding, following instructions, getting along with others, handling changes in routine, and handling stress—Plaintiff also reported that "she cared for her husband and two children, washed dishes, cleaned laundry, vacuumed, grocery shopped once a month, and was able to pay bills, count change, handle a savings account, and use a checkbook." *Id.* at 35 (citing Doc. #7-6, *PageID* #s 277–85). The ALJ further pointed to Plaintiff's testimony, which indicated that she sold car parts online, working three hours each day five days per week, which involved uploading items for sale, answering questions, and pricing items; that she took care of her children and husband, including ensuring he took his medication and was comfortable; that she got along with people "pretty well"; and that she coped with stress by going on walks and working out at the gym. *Id.* The ALJ also noted that Plaintiff testified that there were days she could not get out of bed and days where she could not sleep at all, that she had difficulty concentrating on tasks without starting another tasks, that she had a history of alcohol abuse, and that she self-isolated—further noting that while she may get along with other people she testified that she did not initiate conversations and experienced panic attacks as a result of too much interaction with the public. *Id.* The Sixth Circuit has held that there is no minimum articulation

requirement for an ALJ's Step Three analysis, *Bledsoe,* 165 Fed. Appx. at 411, but even so, the ALJ has extensively explained his reasoning.

Plaintiff argues that the ALJ erroneously cites to Exhibit 6E in support of his findings, further stating that "Exhibit 6E does not provide adequate support for the determination that the functional domains do not exceed moderate limitations." (Doc. #8, *PageID* #565) (referencing Doc. #7-6, *PageID* #277–85). Plaintiff points to evidence in Exhibit 6E that she believes supports that she has greater than moderation limitations in any of the four functional domains, including that she fears going out in public, experiences panic attacks, has "deb[i]litating" depression on a regular basis, cannot "get out of bed or be awake days at a time," has no relationships outside of her home and has no healthy relationships, is no longer able to cook meals regularly, can only shop for groceries once per month, and has deficits in "talking, memory, completing tasks, concentration, understanding, following instructions, and getting along with others." *Id.* Plaintiff further highlights that Exhibit 6E reflects that she no longer has interests and is no longer "able to engage in former hobbies like reading, walking, and being social." *Id.* However, Plaintiff has not explained how those factors would have produced a greater level of limitation in any of the four areas of functioning. Further, Exhibit 6E also indicates that Plaintiff takes care of her husband and two children (Doc. #7-6, *PageID* #279); is able to take care of her personal needs and grooming with a reminder from her husband (*id.* at 280); remembers to take her medicine using her phone's alarm and notes she leaves around the house (*id.*); is able to do laundry and vacuum (*id.*); goes to the grocery store in person to shop for groceries and hygiene products (*id.* at 281); is able to pay her bills, count change, handle a savings account, and use a checkbook or money orders (*id.*); and

engages in in-person social activities at least once per month (*id.*). "Where substantial evidence supports the [ALJ's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion." *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)). Here, as discussed above, substantial evidence supports the ALJ's findings, and therefore, Plaintiff's assignment of error is not persuasive.

Next, Plaintiff contends that the ALJ did not address the supportability factor. (Doc. #8, *PageID* #s 565–68). Plaintiff argues that, while the ALJ uses the words associated with supportability and consistency, the ALJ's supportability analysis instead addresses the factor of consistency. *Id.* Supportability and consistency are "the most important" factors for an ALJ to consider. 20 C.F.R. §404.1520c(b)(2). The supportability factor dictates that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support [her] medical opinion(s) … the more persuasive the medical opinions…." 20 C.F.R. § 404.1520c(c)(1). On the other hand, the consistency factor dictates that "[t]he more consistent a medical opinion(s) … is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s)…." 20 C.F.R. § 404.1520c(c)(2). ALJs need not use "magic words or any specific phrasing" to comply with the applicable regulations. *Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-CV-03834, 2023 WL 3764304, at *7 (S.D. Ohio June 1, 2023) (Bowman, M.J.). That said, an ALJ is required "to show [his] work." *Scott K. v. Comm'r of Soc. Sec.*, No. 3:21-CV-00129, 2022 WL 4484603, at *4 (S.D. Ohio Sept. 27, 2022) (internal citation omitted).

The ALJ expressly addressed the consistency factor, finding NP Calloway's opinion "not consistent with the complete record" and "inconsistent with Dr. Griffith's evaluation observations and testing results." (Doc. #7-2, *PageID* #40). However, to the contrary of Plaintiff's allegations, the ALJ also addressed the supportability factor because he addressed NP Calloway's supporting explanations. *See* 20 C.F.R. § 404.1520c(c)(1). For example, the ALJ noted that NP Calloway listed several of Plaintiff's diagnoses on the assessment form. (Doc. #7-2, *PageID* #40). The ALJ also acknowledged that NP Calloway listed symptoms in support of her opined limitations, especially poor focus, concentration, and memory. *Id.* Moreover, the ALJ accounted for other evidence in the record when engaging in his supportability analysis, specifically noting that treatment records documented substantially normal mental status exam findings as they pertain to memory and concentration, which directly rebuts NP Calloway's supporting explanations. *Id.* Because the ALJ considered the supporting explanations and sources that NP Calloway presented to support her findings, the ALJ has satisfied the supportability requirement. *See* 20 C.F.R. § 404.1520(c)(1); *See Amy G. v. Comm'r of Soc. Sec.*, No. 2:24-CV-1151, 2025 WL 455378, at *21–33 (S.D. Ohio Feb. 11, 2025) (Gentry, M.J.).

Finally, Plaintiff further argues that the ALJ failed to address the other factors after finding NP Calloway's opinion and the prior administrative findings equally not persuasive. (Doc. #8, *PageID* #s 565–68). While an ALJ "may, but [is] not required to, explain" how he considered other factors set forth in paragraph (c)(3) through (c)(5), where two or more medical opinions or prior administrative findings are equally persuasive, the ALJ must articulate how he "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5)…." 20 C.F.R. § 416.920c(b)(3)

("we *will* articulate how we considered the other most persuasive factors….") (emphasis added). "The obligation to articulate how the ALJ considered the factors in paragraphs (c)(3) through (c)(5) arises only when medical opinions are equally well-supported and consistent—not when the ALJ finds them equally unsupported and inconsistent." *Ebony S. v. Comm'r of Soc. Sec.*, 2023 WL 7401227, at *10–11 (S.D. Ohio Nov. 9, 2023) (Litkovitz, M.J.), *adopted by* 2024 WL 20738 (S.D. Ohio Jan. 2, 2024) (Watson, D.J.) (internal citations omitted); S*erowski v. Comm'r of Soc. Sec.*, No. 1:19-cv-2761, 2020 WL 6383187, at *12 (N.D. Ohio Oct. 30, 2020) ("No additional articulation requirement is triggered when multiple opinions are unsupported and/or inconsistent."). The court in *Serowski* further reasoned:

> When an ALJ concludes that multiple opinions are both consistent and supported, the duty to build an accurate bridge between the evidence and the result would require the ALJ to provide an additional explanation articulating why the ALJ chose to favor limitations from one of the opinions over conflicting limitations in a different opinion. See 20 C.F.R. § 404.1520c(b)(3); cf. *Fleischer [v. Astrue]*, 774 F. Supp. 2d [875] at 877 [(N.D. Ohio 2011)]. But, as in this case, when the ALJ has already explained that the opinion at issue was unsupported and/or inconsistent, she has also satisfied any obligation to explain why any limitations from that opinion were not incorporated into the ultimate RFC finding.

*Id.* Because the ALJ found none of the opinions supported and consistent with the record, he is not required to articulate how he considered the other factors in 20 C.F.R. § 416.920c(c)(3) through (c)(5). Accordingly, Plaintiff's statement of error is without merit.

For these reasons, Plaintiff's Statement of Errors is not well-taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #8) is **OVERRULED;**

2. The Commissioner's non-disability determination is **AFFIRMED**; and

3. The case be terminated on the Court's docket.

September 29, 2026

*s/ Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge